837 P.2d 1089 (1992)
In the Matter of the ADOPTION of R.S.C., a Minor.
R.C.L. and K.L., Appellants, (Petitioners),
v.
K.S.C., Appellee, (Respondent).
No. C-91-5.
Supreme Court of Wyoming.
September 11, 1992.
*1091 Robert O. Anderson, Andrews & Anderson, Riverton, for appellants.
George L. Arnold, Evanston, for appellee.
Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT[*] and GOLDEN, JJ.
THOMAS, Justice.
The primary issue to be resolved in this case is whether a biological mother can be foreclosed from an action to declare the nonexistence of a presumptive father and child relationship upon a finding by the district court that the action was not brought within a reasonable time or whether, on the other hand, the determination by the trial court constitutes an abuse of discretion. Collateral issues abound relating to abuse of discretion on the part of the trial court in decreeing adoption in favor of the presumptive father; error in connection with that proceeding because of insufficient notice to the biological father; whether the consent of the biological mother to adoption by the presumptive father was required; and, if so, whether it was given. The district court concluded the biological mother was foreclosed from an action to declare the nonexistence of the presumptive father and child relationship; ruled it was in the best interests of the child to maintain the parental rights and custody of the presumptive father; and granted the petition of the presumptive father to adopt the child. We hold there was no abuse of discretion in the action of the trial court in foreclosing the effort of the biological mother to declare the nonexistence of the presumed father and child relationship and in denying the petition of the biological mother's second husband for adoption. However, because the presumptive father enjoys the rights of a natural parent, the award of a decree of adoption to him was superfluous. We affirm the judgment of the trial court in all respects except that the decree of adoption in favor of the presumptive father is vacated as an unnecessary judicial determination.
In their Appellant's Brief, the biological mother and her second husband frame the issues in this language:
I. Did the trial court err in granting the adoption of [the minor child] unto [the presumptive father] when the petition for adoption served upon the natural father did not specifically inform him that his failure to appear or respond could end in the termination of his parental rights and where the mother of the child has not given a written consent to the adoption and instead has filed her written objection thereto?
II. Did the trial court err in denying adoption by Stepfather where his petition had the consent by mother and natural father, evidence demonstrated his good parental qualifications and no other person could legally adopt the child?
In his Brief of Appellee, the presumptive father offers this statement of the issues:
1. Was the relinquishment and consent of the Appellant [the biological mother] required under the Wyoming adoption code, before the court could enter its decree of adoption in favor of Appellee?
2. If the consent of the Appellant [the biological mother] was required, was the court correct in finding that such consent had been given?
3. Do the Appellants have standing to raise issues concerning the alleged defects in the notice of the trial proceedings given by Appellee to the putative father?
4. If the Appellants do have standing, were there any defects in the notice of the trial proceeding given by Appellee to the putative father?

*1092 5. Should the court have entered a default judgment against the Appellee?
6. Was the court correct in granting to Appellee a decree of adoption as to the minor child RSC and in denying Appellant's petition for adoption?
The biological mother and the presumptive father had two daughters born during their marriage, both of whom were the biological children of the mother and the presumptive father. During their marriage, the biological mother then became pregnant by another man. The child was born during wedlock, but there appears to be no issue concerning the fact the presumptive father was not the biological father of the child. The record discloses the presumptive father had undergone a vasectomy prior to the time of conception, and the biological mother admitted an affair with the biological father. That individual never asserted any parental rights, other than his effort to relinquish the child for adoption by the biological mother's second husband. The presumptive father knew prior to the birth he was not the biological father of this child, but he accepted the child into the marital household and, with his consent, his name was entered upon the child's birth certificate. There is no question that he is the presumptive father.
Sometime after the birth of the child, the biological mother left the family and began living with another man whom she later married. She permitted all three of the children to remain with her first husband, the presumptive father. The presumptive father and the biological mother were later divorced and, in the divorce decree which was entered, custody of this minor child was awarded to the presumptive father along with custody of the two older siblings who admittedly were the biological children of the presumptive father. The biological mother was granted parental visitation rights. An appeal was taken from the divorce decree, but that appeal was dismissed.
Some three years later, but within a period of five years of the birth of the child, the second husband of the biological mother endeavored to adopt the child. This case was initiated by the petition for adoption filed on behalf of the biological mother's second husband, in which she joined, thereby manifesting her consent to the adoption by the second husband. A consent to the adoption by the second husband was obtained from the biological father and filed in connection with that petition. In a separate action, which later was consolidated with the adoption proceeding instituted by the second husband, the presumptive father also petitioned for adoption of the child.
The trial court determined that the best interests of this minor child would be served by permitting him to remain in the custody of the only father he had ever known  the presumptive father. This determination was made after extensive psychological testing of the parties and testimony revealing the presumptive father and his second wife would provide, at the very least, an atmosphere equal to that which might be provided by the biological mother and her second husband. The court weighed the stability of the daughters and concluded the boy would stand an equally good chance for a successful upbringing if he were to be raised in that same household. The trial court also considered the fact that removal of the boy from the presumptive father's care would split the children into separate households. On the basis of these findings, the district court refused to grant the petition for adoption by the second husband, in which the biological mother joined, and it granted the petition for adoption by the presumptive father.
This case is essentially one that will resolve the custody of the minor child and, in such instances, our primary concern is directed to the welfare of the child. Laughton v. Laughton, 71 Wyo. 506, 259 P.2d 1093, 43 A.L.R.2d 351 (1953). The same standard is legislatively embraced for granting or denying a decree of adoption. Wyo.Stat. § 1-22-111 (Supp.1992). In an instance such as this, the applicable standard on appeal is, "[i]n reviewing factual determinations in a contested adoption case, our rule is that the court can be reversed only if it committed a clear abuse *1093 of its discretion; that is, if it could not reasonably have concluded as it did." Matter of Adoption of CJH, 778 P.2d 124, 126 (Wyo.1989). In light of the facts of this case, and considering the welfare of the child, we can discern no abuse of discretion in the district court's determination to deny the petition to adopt presented by the second husband and the biological mother.
In contemplating the best interests of the child and the child's welfare, we note there is a strong policy against bastardy. Michael H. v. Gerald D., 491 U.S. 110, 109 S.Ct. 2333, 105 L.Ed.2d 91, reh'g denied 492 U.S. 937, 110 S.Ct. 22, 106 L.Ed.2d 634 (1989). In support of that policy, the Wyoming Legislature has enacted stringent provisions that tend to insure children born during wedlock will not be considered illegitimate. That presumption of paternity is sufficiently strong in certain instances to override even the fact of biological parenthood. For example, in A v. X, Y, and Z, 641 P.2d 1222 (Wyo.1982), cert. denied, 459 U.S. 1021, 103 S.Ct. 388, 74 L.Ed.2d 518 (1982), we held that the biological father did not have standing under the provisions of Wyo.Stat. § 14-2-104 (1978)[1] to challenge the paternity of one who was presumed to be a father under the provisions of Wyo.Stat. § 14-2-102(a) (1986).[2] The thrust of the opinion of this court in X, Y, and Z logically would vitiate the consent to adoption that was obtained from the biological father in this instance. He would be without standing to establish his paternity against the presumptive father.
The critical question then becomes whether the trial court correctly disposed of what it considered an effort on the part of the biological mother to declare the non-existence of the father and child relationship between the presumptive father and the child. The statutory provision is:
(a) A child, his natural mother * * * may bring action:
* * * * * *
(ii) For the purpose of declaring the nonexistence of the father and child relationship presumed under W.S. 14-2-102(a)(i), (ii) or (iii) only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five (5) years after the child's birth.
Wyo.Stat. § 14-2-104(a)(ii) (Supp.1992).
The term "reasonable" has to be defined by the circumstances. While we have found no precedent that matches this case, that proposition has been addressed in a case in which a presumed father sought to determine the nonexistence of the father and child relationship pursuant to the statute. Matter of Paternity of JRW, 814 P.2d 1256 (Wyo.1991). We said there:
Determination of what constitutes "reasonable time" is a question of fact for the trial court. This court recently stated the principle by the following quotation in Matney v. Webster, 808 P.2d 212, 214 (Wyo.1991):
What constitutes a reasonable time in any particular case is a question of fact. Mott Equity Elevator v. Svihovec, 236 N.W.2d 900, 907 (N.D.1975).
In the application of this rule and the further principle regarding appellate review, the court, in Miller v. Sybouts, 97 Wash.2d 445, 645 P.2d 1082, 1085 (1982), said that "[n]ormally we will not substitute our judgment for that of the trial *1094 court when there is support for its decision." We will follow those principles for this decision to concur with the decision of the trial court. Klawitter v. Crawford, 185 Ill.App.3d 778, 133 Ill. Dec. 721, 727, 541 N.E.2d 1159, 1165 (1989).

JRW, 814 P.2d at 1263.
We agree that, "[w]hat constitutes a 'reasonable time' is not defined by the law, but rather is a question to be decided by the judge according to the facts and circumstances of the case or as ascertained by the findings of the jury." Cleghorn v. Dallas Power & Light Co., 611 S.W.2d 893, 897 (Tex.Civ.App.1981) (quoting Benavides v. Hunt, 79 Tex. 185, 15 S.W. 396 (1891) (reversed on grounds not affecting cited material, Dallas Power & Light Co. v. Cleghorn, 623 S.W.2d 310 (Tex.1981)).
Under the standard of review articulated in CJH, in order to conclude that a reasonable time had not expired, we must find an abuse of discretion on the part of the trial court. Our evaluation of the facts in this case leads us to the conclusion that one cannot say that the district court "could not have reasonably concluded as it did" by finding that the petition of the biological mother was time barred under § 14-2-104(a)(ii).
All of the parties who had an interest knew in early 1986 about the biological ancestry of this minor child. The petition for adoption in which the biological mother joined was filed December 15, 1989. Even at the time of the divorce, the parties were aware that the presumptive father was not the biological father and, yet, the presumptive father was awarded custody pursuant to the divorce decree. That circumstance leads to a conclusion that, in 1986, the parties were content to allow the presumption pursuant to § 14-2-102(a)(i) and (iv) to control. The issue was not contested until almost four years after all of the relevant facts were known, and we agree with the determination of fact by the district court that it was time barred under the statute that requires the action to be brought within a reasonable time. This forecloses the biological mother, the only party who has a statutory right to challenge the parent-child relationship, from contesting the paternity in this instance.
In this regard, we take guidance and comfort from Wolf v. Goin, 26 Or.App. 23, 552 P.2d 258 (1976), in which paternity proceedings were initiated some four years after the enactment of a statute limiting the time for bringing the action to six years. The Oregon appellate court held that the limitation included the time of inaction before the statute was passed, saying:
[L]itigant [must be] afforded a "reasonable" opportunity to initiate a proceeding subsequent to the enactment of the new statute. * * * [T]here remained an interval of nearly four years, a patently "reasonable" period, within which petitioner might have sought to prosecute an action to establish paternity. Failing to have taken that necessary step in a timely fashion, petitioner is now barred from proceeding on this cause of action.
Wolf 552 P.2d at 261 (citations omitted).
The effect of foreclosing the effort of the biological mother to seek an adjudication of the nonexistence of the father and child relationship is that the biological mother and the presumptive father are acknowledged in the law as the parents of the child. Consequently, the petition for adoption filed by the second husband, in which the biological mother joined, was deficient because the requisite consent of both parents as specified in Wyo.Stat. § 1-22-109 (1988) was not filed with it as required in Wyo.Stat. § 1-22-104 (1988). That failure, without more, justifies the decision of the trial court to deny the second husband's petition for adoption.
This leaves only the propriety of granting the adoption petition of the presumed father. Since his presumed paternity cannot be attacked by the parties in this matter, he is left in the situation of being not only a procedural presumptive father but a substantive presumptive father. He is the parent of the child and has the same status as a biological father. We are aware of no procedure or rule that would *1095 justify an adoption proceeding by a biological parent who had not in some way had parental rights terminated. Furthermore, the petition for adoption filed by the presumptive father is deficient in the same way that the petition for adoption filed by the second husband is deficient. The awarding of an adoption decree to the presumptive father was superfluous and, in our judgment, it makes the situation less amorphous if it is stricken.
Consequently, we think the only issue between the biological mother and the presumptive father is the right of custody pursuant to the adjudication in their divorce decree. The custodial rights were not adjusted in any way by the trial court, and custody remains with the presumptive father. If any effort is to be made to provide exclusive parental rights to the presumptive father, the effort should be made under the statutes relating to the termination of parental rights.
The judgment of the trial court is affirmed in every respect except for the granting of a decree of adoption to the presumptive father. His rights are established by the fact that he is the substantively presumed father, and the only issue left is that of custody which has been awarded to him. For that reason, the decree of adoption in favor of the presumptive father is vacated.
NOTES
[*] Chief Justice at time of oral argument.
[1] Wyo.Stat. § 14-2-104 (1978) provided, in pertinent part:

(a) A child, his natural mother or a man presumed to be his father under W.S. 14-2-102(a)(i), (ii) or (iii) may bring action:
* * * * * *
(b) Any interested party may bring an action at any time for the purpose of determining the existence or nonexistence of the father and child relationship presumed under W.S. 14-2-102(a)(iv).
(c) An action to determine the existence of the father and child relationship with respect to a child who has no presumed father under W.S. 14-2-102 may be brought * * *.
[2] Wyo.Stat. § 14-2-102(a)(i) (1986) provided:

(a) A man is presumed to be the natural father of a child if:
(i) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred (300) days after the marriage is terminated by death, annulment or divorce or after a decree of separation is entered by a court; * * *.